No. 87-313

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

DELBERT D. SNYDER,

       Claimant and Appellant,

  -vs-

THE ANACONDA COMPANY,

       Employer/Defendant and Respondent,

---

APPEAL FROM:  The Workers' Compensation Court, The Honorable Timothy
Reardon, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Burgess, Joyce & Whelan; Thomas J. Joyce, Butte,
Montana

      For Respondent:

          Michael J. McKeon, Anaconda, Montana

---

Submitted on Briefs:  Jan. 7, 1988

Decided:  March 22, 1988

Filed: MAR 2 2 1988

*Ethel M. Harrison*

---

Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from a Workers' Compensation Court judgment entered on July 16, 1987, denying claimant Delbert Snyder's petition for permanent disability benefits. We affirm.

Mr. Snyder presents the following issues for review:

(1) Did the Workers' Compensation Court err by failing to find that Mr. Snyder had reached maximum healing and that the work injury had totally and permanently disabled Mr. Snyder, and what effect, if any, should Mr. Snyder's car accident following the work injury have on his entitlement to benefits?

(2) Did the lower court err in requiring Mr. Snyder to prove that his disability was caused by his work injury rather than his preexisting condition and the car accident?

Mr. Snyder injured his back operating a mechanical shovel for the Anaconda Company on January 6, 1982. Following the injury Mr. Snyder petitioned for benefits. The Anaconda Company (Anaconda) denied liability contending that the injury was not work related. Mr. Snyder petitioned for a hearing before the Workers' Compensation Court, and on October 11, 1985, the court held that Mr. Snyder's injury entitled him to medical and temporary total disability benefits from the date of the injury to December 28, 1982. The lower court refused to "speculate whether any additional temporary total disability benefits may be due beyond that date" because Mr. Snyder reinjured his back in a car wreck on December 28, 1982. The lower court reasoned that "[t]he claimant still has the burden of proving his case and it

2

simply has not been proven that his problems after the auto accident are in any way related to his employment."

Following this judgment Mr. Snyder petitioned for permanent disability benefits. Again the Workers' Compensation Court held that Mr. Snyder had failed to prove his case. According to the lower court,

> Claimant is, in a sense, a victim because we do believe he is suffering, but given the lengthy pre-injury medical care and subsequent car accident in December, 1982, he has not been able to establish any entitlement to additional compensation benefits beyond December, 1982.

As noted by the lower court, the crux of the issue here is whether Mr. Snyder's disability resulted from the work injury, or from the 1982 car accident and his preexisting back problems. The medical evidence used to resolve this issue consisted of two depositions from James B. Mossman, Mr. Snyder's chiropractor, and a deposition from Charles E. Buehler, an orthopedic surgeon who examined Mr. Snyder at the request of Anaconda's claim's adjustment firm. The lower court also heard Mr. Snyder's testimony at the hearing held pursuant to his petition.

Dr. Mossman testified that prior to the work injury he treated Mr. Snyder for "myositis" and associated muscle inflammation from the neck to the lower back. After the work injury Dr. Mossman stated that Mr. Snyder complained of new pain in the lower back. The new pain, according to Dr. Mossman, was probably caused by an awkward sitting position Mr. Snyder was forced to assume while pushing foot pedals on the shovel he operated for Anaconda. The position and the machine's vibration would "tend to cause micro-traumatic strain and sprain problems."

3

Dr. Mossman also treated Mr. Snyder after he reinjured the back in the December 28, 1982 car accident. Just prior to the car accident, according to Dr. Mossman, Mr. Snyder's condition was improved but continuing and chronic. Dr. Mossman stated that the car accident aggravated the work injury and caused problems in Mr. Snyder's neck. However, by March of 1984, according to Dr. Mossman, Mr. Snyder's back had returned to its pre-accident condition.

Dr. Mossman characterized the condition of Mr. Snyder's back in March of 1984 as stable and referred to it as a disabling "underlying chronic lumbar problem." Dr. Mossman also deposed that jarring and jostling of the spine at work probably caused the lumbar condition. However, Mr. Snyder's preexisting osteoarthritis of the spine also contributed to his disability, according to Dr. Mossman. Dr. Mossman also deposed that Mr. Snyder's osteoarthritis could have been aggravated and accelerated by Mr. Snyder's job duties.

Dr. Buehler testified that when he examined Mr. Snyder in May of 1982, Mr. Snyder was suffering from osteoarthritis of the lumbar spine. The osteoarthritis, according to Dr. Buehler, would predispose Mr. Snyder to repeated injuries if Mr. Snyder continued to perform the sort of duties he performed for Anaconda. However, on the date of his examination, according to Dr. Buehler, there was no evidence that work related trauma to the back was causing Mr. Snyder's problems. The problem at that time, according to Dr. Buehler, was the result of osteoarthritis which was severe for a man Mr. Snyder's age, and which predated the injury. The relationship between the arthritis and the work injury was explained in Dr. Buehler's deposition as follows:

> Q. Okay. When you examined him in May of 1982 and made your diagnosis of diffuse arthritis, did you in any way conclude that the condition

4

which you diagnosed in May of 1982 was caused by the incident he referred to while pushing on the pedals of the machine?

A. No. I do not think that the arthritis in his back was caused while pushing on the pedals on the machine in January of 1982. I do think that maneuvers such as he described, pushing on the pedals, could have exacerbated a preexisting back condition.

Q. Okay. Now, when you say 'could have exacerbated,' are you referring to a temporary type of exacerbation?

A. Probably a temporary type of exacerbation, yes.

Q. Explain that if you would.

A. I think this man has marked changes in his back, radiographically, with osteoarthritis that's going to predispose him to injuries to his back. His back is wearing out. There are going to be things that will irritate it. Usually the history of this problem is that these things will irritate it.
He may develop some muscle spasm, some pain in his back for a period of time. Usually that will get better with proper care in taking care of it. But, again, he's going to have, then, repeated incidents. I think that's going to be the history of this man's back.

Dr. Buehler did not testify as to whether or not work duties which demanded jarring and jostling of the spine could have aggravated and accelerated the osteoarthritis. Both of the medical experts deposed in this case agree that Mr. Snyder's condition prevents him from returning to the job he performed at the time of the work injury.

Mr. Snyder testified that for three months after the work injury, extreme pain prevented him from being able to stand for any appreciable amount of time. Mr. Snyder also testified that four or five months after the work injury it

5

"leveled off" and improved. According to Mr. Snyder, as long as he was "more or less inactive", the injury was not a constant bother.

Mr. Snyder also stated that following the 1982 car accident the aggravated back problem once again restricted him. However, Mr. Snyder testified that the aggravation caused by the car accident was less severe than the back problem he suffered from immediately after the work injury. Mr. Snyder also testified that around three months after the car accident his back improved and stabilized once again. Mr. Snyder equated his back problems at that time to the condition he suffered from just prior to the 1982 car accident.

## ISSUE 1

Did the Workers' Compensation Court err by failing to find that Mr. Snyder had reached maximum healing and that the work injury had totally and permanently disabled Mr. Snyder, and what effect, if any, should Mr. Snyder's car accident following the work injury have on his entitlement to benefits?

Mr. Snyder contends that the lower court improperly failed to find that his employment caused his disability. We disagree and affirm the lower court's decision to deny a permanent disability because substantial evidence supports the lower court's decision.

The claimant bears the burden of showing an entitlement to benefits under the Workers' Compensation Act. Metzger v. Chemetron Corp. (Mont. 1984), 687 P.2d 1033, 1035, 41 St.Rep. 1788, 1790. And in reviewing the lower court's findings, we will not overturn a Workers' Compensation Court decision supported by substantial evidence. Metzger, 687 P.2d at 1035.

To receive an entitlement to permanent disability benefits, Mr. Snyder must show by a preponderance of the probative credible evidence that an injury caused his disability. Ferdinand v. Lodge # 456, B.P.O.E., Lewistown (Mont. 1986), 719 P.2d 775, 777, 43 St.Rep. 955, 956-57. Findings based on substantial though conflicting evidence will not be disturbed on appeal. Ferdinand, 719 P.2d at 777.

In this case, the medical evidence is conflicting as to whether or not a work related injury caused or contributed to Mr. Snyder's disability. In this regard, Dr. Mossman deposed that a series of micro-traumas occurring to Mr. Snyder's back culminated in the injury which caused his current disability. However, Dr. Buehler deposed that no sign of the injury was present at the time of his examination, and that osteoarthritis caused Mr. Snyder's disability. Dr. Buehler's deposition provides substantial though conflicting evidence that the work injury was not a factor in causing Mr. Snyder's disability. Thus, the lower court's findings are adequately supported in the record, and we affirm on this issue.


ISSUE 2

Did the lower court err in requiring Mr. Snyder to prove that his disability was caused by the work injury rather than the auto accident and his preexisting condition?

As stated previously, permanent disabilities under the 1981 Workers' Compensation Act are compensable where they result from what the Act defines as an "injury". See §§ 39-71-116(12), 39-71-116(13), MCA (1981), and see Schieno v. City of Billings (Mont. 1984), 683 P.2d 953, 955, 41 St.Rep. 1157, 1159. In this case, part of Mr. Snyder's burden was a showing that the work injury rather than other causes resulted in his disability. Schieno, 683 P.2d at 955.

7

Mr. Snyder contends that the evidence irrefutably shows that the work injury at least contributed to his disability. However, Dr. Buehler's deposition provides substantial evidence that the injury was completely healed prior to the car accident. The lower court found on the basis of this evidence that the work injury did not contribute to the disability. Thus, we affirm.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

8

Mr. Justice John C. Sheehy, dissenting:


I dissent in this case where the Workers' Compensation Court completely missed the point it should have decided, and now this Court has missed it too.

The point to be decided is this: Is Delbert Snyder now totally disabled from a compensable industrial accident which occurred on or about January 6, 1982? Unequivocally, the answer should be yes.

To begin with, the employer in Montana takes the physical condition of his employee, as he finds it. If the physical condition of the employee is fragile, from whatever cause, susceptible to injury and aggravation, the risk is on the employer. It is the compensable injury, regardless of the physical condition of the worker at the time, and the direct results of the compensable injury that determine the worker's right to compensation benefits. Gaffney v. Industrial Accident Board (1955), 129 Mont. 394, 287 P.2d 256.

In January, 1982, Delbert Snyder was in fragile physical condition. He got that way from more than 35 years of hard labor working for the Anaconda Company. When he was 20 years old, he went to work for the Anaconda Company as a contract miner for about two years, when he went into the armed services. Upon his return from the service, in 1946, he returned to the Anaconda Company except for a short stint at Hanson Packing Company.

His first industrial accident at the Anaconda Company occurred in 1943. As he was coming up the Belmont Mine shaft, at the 3,800 foot level, something he could not identify hit him and he was rendered unconscious. He

suffered a neck injury, was in the hospital, and his neck was "put in restriction" for a couple of weeks.

In 1958, working as a contract miner in the Leonard Mine, he was involved in an underground cave-in. His left leg was broken between the knee and the ankle; he lost two toes, his middle toe is a hammer toe, his toe next to the big toe is stiff, and his big toe is the only useable toe on his left foot. He was off work with these injuries for 16 months. Ever since he has walked with a slight limp. At the site of the leg fracture he has developed osteomyelitis for which he must wear a metal shield to avoid bumping.

In 1960, as he was employed as a shovel oiler by the Anaconda Company, he and a fellow worker were attempting to move the shovel which required the operation of a lever. Because the machinery was partly worn, the lever did not work properly and they extended the length of the lever by covering it with a 4-foot length of 2-inch pipe. As they shoved and pulled this lever, the machine kicked the lever out, and Delbert was struck on the chest, and suffered two broken ribs.

The last occasion prior to his final injury was when he was riding a bus supplied by the Anaconda Company to transport employees into the pit area. It was raining and the road had been changed. The bus driver got confused, took a wrong turn and drove the bus into a 10-foot deep ditch. Delbert Snyder was rendered unconscious, and when he came to found himself sitting on the back of the seat immediately in front of him with his left leg twisted under him. He had slit open his left leg over the old break.

Delbert Snyder eventually became a shovel operator. This is a job for a strong back. The shovel itself constantly vibrates and rattles. The teeth of the shovel must frequently be changed, and the teeth are heavy. Many

parts of the machine have to be repaired or replaced and require heavy lifting. In the fall of 1981, Delbert Snyder found it necessary to seek treatment from Dr. James B. Mossman, for the condition of his back. Dr. Mossman testified that Delbert Snyder's back had deteriorated from the constant assaults upon his body of micro-traumas. A doctor, employed by the Anaconda Company in May, 1982, to examine Delbert's back, Dr. Charles Buehler, found that Delbert had sustained marked degenerative changes in the lumbar spine due to osteoarthritis, and that the condition had existed for at least a year and perhaps more. He also found osteomyelitis of the left leg. Dr. Buehler testified that the same person, a year earlier in May, 1981, if Dr. Buehler had examined him then, would have been restricted in any attempt to perform certain functions because of his diffuse arthritis throughout his spine. With respect to his osteomyelitis, he would also have had restrictions because of the danger of the left leg being refractured.

Thus, Delbert Snyder, in January, 1982, was unknowingly awaiting the inevitable, literally, the straw that would break the camel's back. It occurred when he was put to work on a new shovel for which the Anaconda Company had changed the seat cushion. The result of the change was that to work the levers which turn the shovel left or right, Delbert had to stretch his legs and twist his body in order to operate the levers. Delbert knew he was being hurt, but he finished his shift and brought the matter to the attention to the foreman. On the next day when he reported to work, the cushion had not been changed as promised, and he refused to go back on the shovel. His low back bothered him so that he was examined again by Dr. Mossman whose report of the incident, dated January 6, was found in Dr. Mossman's records

and noted by the Workers' Compensation Court in finding no. 13 in its first decision of October 11, 1985:

> How accident occurred: had been having minor problem with low back--used new seat and shovel and low back went out causing extreme pain.

Delbert Snyder had worked his last shift for the Anaconda Company. He saw Dr. Mossman on several occasions through the summer and early fall of 1982 when his condition appeared to stabilize, but he was never again in condition to return to work.

On December 28, 1982, Delbert Snyder was involved in an automobile accident, where his neck and back sustained injuries. When his case came before the Workers' Compensation Court, the argument was then made by the Anaconda Company that his condition was a result of the car accident, and not of a compensable injury. The Workers' Compensation Court rejected this contention, holding on October 11, 1985 in paragraph 2 of its conclusions of law:

> . . . here the evidence clearly establishes that claimant was being treated for back problems prior to January, 1982. Nonetheless, Dr. Mossman specifically noted in his deposition that claimant had new symptoms resulting from his having to work on a new shovel with different physical requirements. This evidence coupled with the claimant's testimony establishes by a preponderance that the claimant's condition was aggravated by the shift he worked on the Buyrus Erie shovel.

The Workers' Compensation Court ordered the Anaconda Company to pay temporary total disability benefits and medical benefits to Delbert from January 6, 1982 to December 28, 1982. The court said it was not in a position to speculate as to whether there was any additional temporary total disability due because of lack of evidence in the cause.

- 12 -

The matter returned to the Workers' Compensation Court on claimant's petition that he was totally disabled, and entitled to total disability benefits until he reached age 65, and thereafter to permanent partial disability benefits. The Anaconda Company produced no new medical evidence of its own. The only practitioner to testify was a chiropractor, Dr. Mossman, against whom counsel for the Anaconda Company continually contended that since he was not a medical doctor he could not give an opinion as to the status of the injuries and condition of Delbert Snyder, and thus succeeded in downgrading Dr. Mossman's testimony before the Workers' Compensation Court. Entering its findings and conclusions against Delbert Snyder on July 16, 1987, the Workers' Compensation Court used selected portions of Dr. Buehler's testimony from his examination in May, 1982, and from Dr. Mossman's cross-examination of December 10, 1986, to determine:

> . . . we do not find sufficient evidence to support the claim. It is difficult to believe that a non-traumatic incident such as awkward posture could result in the extensive disability being claimed. In our prior order, we awarded just under a year's worth of total disability benefits. At that time claimant was in an auto accident, which by its very nature is more traumatic. Though claimant tries to emphasize the physical complaints of the auto accident as being primarily to the upper back, there is no question that the low back was also affected acutely. Dr. Mossman is simply unable to sort out the post-injury, pre-auto accident condition to the post-auto accident complaints to persuade the court that additional benefits are owed. Additionally, claimant has been in yet another accident after the trial. Claimant appears to have some permanent disability as a result of his January 1982 injury. On the record before us, however, it is not possible to determine the extent of that disability under these facts. Claimant is clearly not totally disabled because of the January, 1982 injury. . . (Emphasis supplied.)

- 13 -

As we said, the point of Delbert Snyder's claim is that his compensable injury of January 6, 1982, resulted in his total disability and that since January 6, 1982, he has been and is now totally disabled. The fact that he had two automobile accidents in the intervening time, out of which he sustained significant injuries, does not change the fact that he still is in the same condition now that he was in September-December, 1983, before the first accident. He was and is totally disabled. The automobile accidents are irrelevant.

Dr. Mossman testified:

Q: With respect to time, Doctor, we are talking about the time period covered in the reports that you just described from, say, September to December of 1983 generally. A: During that time in this stabilized period, Mr. Snyder was still primarily incapable of active employment as such. (An objection was made at this point, on which the Workers' Compensation Court did not rule.)

. . .

A. Mr. Snyder's condition at that point precluded him from lifting anything excessive probably 25 lbs., especially from the floor, bending and lifting; especially twisting and lifting would not be advisable. We suggested to him to stay away from any type of consistent vibration, which seems to have brought on the chronic problem earlier of the micro-traumatic exposure.

Beyond that, any type of consistent reaching overhead would have been somewhat difficult for him also. Such as, if you would like an expansion on that, such as maybe electric work overhead which he might do in a remodeling situation or something where he would be reaching with his head up or his arms up. That would have been difficult for him because of the neck problem also.

As to Dr. Mossman's "release" of Delbert following the automobile accident, Dr. Mossman testified:

A. There are many forms of "release" in our practice. We use release asymptomatic, which means release without symptoms; released pre-clinical, which means generally speaking, released in the condition [sic] of the patient was prior to the previous injury or to that injury. We may also release with residual, which means they have an underlying problem still but that it may have reached maximum healing and we don't expect it to make any major change one way or the other.

In Del's case, I believe, I released him in a pre-clinical condition, <u>which</u> <u>relates</u> <u>back</u> <u>to</u> <u>the</u> <u>condition</u> <u>he</u> <u>was</u> <u>in</u> <u>prior</u> <u>to</u> <u>the</u> <u>auto</u> <u>accident</u>. (Emphasis supplied.)

The clear import of Dr. Mossman's testimony is that the automobile accident made no change in the condition of Delbert Snyder. He was unable to work before the accident; he is unable to work after the accident. The responsibility for his total disability necessarily falls on the Anaconda Company.

The second automobile accident occurred on December 31, 1986, after the second hearing but before the decision of the Workers' Compensation Court. It also occurred while Delbert was and remains totally incapacitated. Nothing in the evidence indicates any change in that condition.

The Anaconda Company offered no "medical" evidence to controvert the testimony of Dr. Mossman.

There you have it. The same Workers' Compensation Court that found a compensable injury on January 6, 1982, and awarded Delbert Snyder nearly a year of total disability resulting therefrom, now refers to the incident as "non-traumatic," and inconsistent with total disability. In so doing, the Workers' Compensation Court ignores substantial evidence in the record from Dr. Mossman establishing that Delbert Snyder was totally disabled in December, 1982, when the automobile accident occurred, and is totally disabled

now. There is no question of credibility involved here. Since all the medical evidence is by deposition, we are in as good a position to judge thereof as is the Workers' Compensation Court.

Delbert Snyder has become an industrial throw-away. Like hundreds, nay thousands of other workers, the Anaconda Company used his youth and his strength until he was worn out, assaulted him with a compensable injury, and now he is assigned to the scrap-heap. As a Court, do we dare to call ourselves enlightened?

I would reverse with directions to the Workers' Compensation Court to award Delbert Snyder all available benefits based on his total disability since January 6, 1982.

_____
Justice

I join in the foregoing dissent of Mr. Justice John C. Sheehy.

_____
Justice